Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| LUPIS ENTERPRISES INCORPORATED, representada por su presidente LCDO. RAFAEL SÁNCHEZ HERNÁNDEZ<br>Peticionario<br><br>v.<br><br>EDUARDO FIGUEROA PADILLA, su esposa DIANA JOVÉ VÉLEZ y la SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; ACAR ENTERPRISES INC., representa por su presidenta, ADA RÍOS MALDONADO<br>Apelados<br><br><br>RAFAEL SÁNCHEZ HERNÁNDEZ<br>Tercero demandado | KLCE202500322<br><br>cons.<br><br>KLCE202500323 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2020CV02231<br><br>Sobre: Sentencia Declaratoria e Injunction |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Juez Romero García[1] y el Juez Adames Soto

Adames Soto, Juez Ponente


**SENTENCIA**


En San Juan, Puerto Rico, a 25 de agosto de 2025.

Comparece Lupis Enterprises Inc., (Lupis Enterprises o parte apelante), mediante recurso de apelación, al cual se le asignó el alfanumérico KLCE202500322. Nos solicita que revisemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 27 de enero de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Moción de Sentencia Sumaria Parcial* presentada por el Sr. Eduardo Figueroa Padilla (señor Figueroa Padilla), la Sra. Diana Jové Vélez (señora Jové Vélez), y la Sociedad Legal de Gananciales compuesta por ambos, (en conjunto, parte apelada-recurrida).

---

[1] Mediante Orden Administrativa OATA-2025-090 se designa a la Hon. Giselle Romero García en sustitución del Hon. Abelardo Bermúdez Torres.

NÚMERO IDENTIFICADOR

SEN2025_____

También, se encuentra ante nuestra consideración el recurso de *certiorari* identificado con el alfanumérico KLCE202500323, presentado por el Lcdo. Rafael Sánchez Hernández (señor Sánchez Hernández o parte peticionaria), en su carácter personal y por derecho propio. En este, nos solicita la revocación de una *Resolución* emitida el 27 de enero de 2025 por el TPI, que tuvo como resultado la denegatoria de la *Moción de Sentencia Sumaria por Prescripción* instada por el señor Sánchez Hernández contra la parte apelada-recurrida.

La Reglas 17 y 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, nos habilitan para ordenar *motu proprio* la consolidación de recursos.[2] Visto que los recursos aludidos en los párrafos que preceden se encuentran íntimamente relacionados, hemos dispuesto ordenar su consolidación.

Por último, adelantamos que, por los fundamentos que expondremos a continuación, hemos decidido *revocar* tanto la *Sentencia Parcial* apelada, como la *Resolución* recurrida.

## I. Resumen del tracto procesal

Las incidencias procesales en este caso abundan, pero nos limitaremos a resaltar o mencionar aquellas que ayuden a contextualizar los errores señalados en los recursos ante nuestra atención.

El inicio de las controversias que nos competen se encuentra en la *Demanda en cobro de dinero* presentada por el señor Sánchez Hernández en el 2011, contra el señor Figueroa Padilla, la señora Jové Vélez, y la Sociedad Legal de Gananciales compuesta por ambos, bajo el caso identificado como civil núm. D CD2012-0559.

Como resultado, el 9 de enero de 2017, el foro primario dictó *Sentencia* en favor del señor Sánchez Hernández, declarando *Ha Lugar* la *Demanda*

---

[2] Además, refiérase a la Orden Adminstrativa DJ 2019-316, que procura promover y uniformar la consolidación de recurso presentados ante el Tribunal de Apelaciones, en la medida en que promueva la buena administración de la justicia, la aceleración en la resolución de disputas y la reducción en los costos de la litigación, según se cita de *Vives Vázquez v. E.L.A.*, 142 DPR 117, 125-126 (1996).

contra los apelados-recurridos, ordenando a estos últimos el pago de cincuenta mil dólares, más diez mil dólares en honorarios de abogados. En tal pleito Lupis Enterprises nunca fue parte.

Ligado al dictamen aludido, el 1 de mayo de 2017, el TPI emitió sendas órdenes de embargo en aseguramiento de la efectividad de la *Sentencia*. La primera de tales órdenes fue dirigida al señor Figueroa Padilla y a Lupis Enterprise, para que se consignara el Certificado 1 de 200 de acciones corporativas en el Tribunal. Luego, ante la falta de pago de la suma a la que fueron condenados a satisfacer los allí demandados, el foro de instancia ordenó la venta en pública subasta de las acciones embargadas, hasta cubrir en todo o en parte el importe de la *Sentencia*.

Celebrada la subasta pública, el señor Sánchez Hernández resultó ser el mejor postor, el 24 de octubre de 2018, por lo que adquirió doscientas (200) acciones de la corporación, por la suma de cincuenta y siete mil dólares ($57,000.00).

Sin embargo, pasado un tiempo, el 9 de enero de 2019, la parte apelada-recurrida (demandada en el pleito inicial), presentó *Moción de nulidad de venta judicial* y de *Nulidad de decisiones corporativas*. Allí arguyó que el señor Sánchez Hernández había reclamado ser dueño de todas las acciones de Lupis Enterprise, a raíz de la venta judicial mencionada en el párrafo que precede, a pesar de en realidad haber adquirido solo doscientas (200) acciones de una totalidad de mil (1,000), separando, además, al señor Figueroa Padilla de su cargo de todas las posiciones que ocupaba en dicha corporación.

El 15 de marzo de 2019, el foro primario emitió una *Resolución* declarándolas *No Ha Lugar*.

Inconforme, la parte apelada-recurrida acudió ante este Tribunal de Apelaciones, mediante el recurso de *certiorari* identificado bajo el alfanumérico KLCE201900403.

El 21 de mayo de 2019, un panel hermano emitió *Sentencia* confirmatoria sobre la validez de la venta judicial de las acciones, al concluir

que el aviso de subasta se había efectuado conforme a derecho. Sin embargo, contrario a lo resuelto por el TPI, el mismo panel de jueces concluyó que el señor Sánchez Hernández había obtenido únicamente doscientas (200) acciones corporativas de Lupis Enterprise. Además, determinó que el foro primario carecía de jurisdicción para considerar si procedía la nulidad de las decisiones corporativas, según solicitada por la parte apelada-recurrida, pues ello no podía ser dilucidado en la etapa post-sentencia, sino que precisaba de la radicación de un pleito independiente.

Advenida final y firme la *Sentencia* del caso D CD2012-0559, entonces fue Lupis Enterprise la que presentó una *Demanda*, el 21 de julio de 2020, sobre *injunction* y sentencia declaratoria contra el señor Figueroa Padilla, la señora Jové Vélez, la Sociedad Legal de Gananciales compuesta por ambos, y la ACAR Enterprise Inc. (ACAR), (esta última figuró como parte indispensable, puesto que, se alegó, tenía una deuda con Lupis Enterprise). En síntesis, Lupis Enterprise le solicitó al foro de instancia que declarara que: el señor Figueroa Padilla no tenía derecho, ni participación, en Lupis Enterprise; que le ordenara entregar los documentos corporativos que estaban en su poder; que devolviera cuatrocientos mil dólares ($400,000) que obtuvo ilegalmente de la corporación, y; que se le prohibiera ejercer control sobre la administración y los activos de esta.

El 21 de abril de 2021, la parte apelada-recurrida presentó *Contestación a Demanda, Reconvención y Demanda de Tercero* contra Lupis Enterprise, el señor Sánchez Hernández en su capacidad personal, y como presidente de dicha corporación. En lo pertinente, la parte apelada-recurrida adujo que, el señor Sánchez Hernández carecía de legitimación activa para instar el pleito a nombre de Lupis Enterprise, pues solo era titular de doscientas (200) de un total de mil (1,000) acciones. Siguiendo esta misma lógica, aseveró que, como accionista minoritario, el señor Sánchez Hernández no podía celebrar una reunión, sin la citación y participación de los demás accionistas, ni destituir al señor Figueroa Padilla, ni nombrar una nueva junta de directores. También,

solicitó el remedio interdictal provisto por el Art. 7.15 de la Ley de Corporaciones, *infra*, con el fin de que se dejara sin efecto las decisiones corporativas antes mencionadas, y añadió una reclamación por los daños y perjuicios que alegó le fueron causados.

Ante ello, el 25 de junio de 2021, Lupis Enterpise presentó un *Escrito Solicitando Desestimación por Prescripción* de la reconvención enmendada, aduciendo que había transcurrido el término prescriptivo de un año para instar la acción contenida en las alegaciones de dicha reconvención, sin que se hubiese ejercitado la acción.

De manera similar, el 30 de junio de 2021, el señor Sánchez Hernández también presentó una *Moción Solicitando Desestimación de la Demanda contra Tercero,* alzando planteamientos similares sobre prescripción, según descritos en el párrafo que antecede. Adujo, además, que no procedía la causa de acción en su contra, pues no se había alegado que incurriera en la negligencia crasa exigida en *Rivera San Feliz v. FirstBank*, infra, para este tipo de casos. De igual forma esgrimió que tampoco procedía la causa de acción instada al amparo del Art. 7.15 de la Ley de Corporaciones, *infra*, por razón de incuria.

A raíz de las referidas mociones de desestimación, el 1 de julio de 2021, la parte apelada-recurrida presentó una *Oposición a Moción de Desestimación de Demanda de Tercero.*

Evaluadas las respectivas posturas de las partes, el 13 de enero de 2022, el TPI declaró *No Ha Lugar* ambas mociones de desestimación.

Inconformes, el 4 de marzo de 2022, el señor Sánchez Hernández y Lupis Enterprise presentaron por separado sendos recursos de *certiorari* ante este foro intermedio.

Sin embargo, el 3 de mayo de 2022, denegamos la expedición del recurso KLCE202200259, por razón de no ser persuadidos de que se justificara nuestra intervención con el asunto interlocutorio planteado en ese momento.

Por tanto, continuando los procesos ante el TPI, el 24 de marzo de 2023, el señor Sánchez Hernández instó *Contestación a Demanda contra Tercero*

*Enmendada.* En lo sustantivo, esgrimió que, a pesar de que el documento que refería al número de acciones adquiridas leía doscientos de mil, estas eran todas las acciones de Lupis Enterprise, sin que existiera otro accionista. En cuanto al interdicto estatutario instado en su contra, reclamó que se trataba de un remedio judicial inmediato o expedito, por lo que no procedía concederlo, al haber transcurrido cerca de tres años luego de que fuera removido el señor Figueroa Padilla del puesto.

El 25 de marzo de 2023, el señor Sánchez Hernández presentó una *Contestación Enmendada a Demanda contra Tercero Enmendada.*

Por su parte, Lupis Enterprise compareció el 28 de marzo de 2023, mediante una *Contestación a Reconvención Enmendada.*

Tras múltiples incidentes procesales, el 4 de septiembre de 2024, la parte apelada-recurrida presentó una *Moción de Sentencia Sumaria Parcial,* bajo la teoría legal de que, en el pleito identificado como *Rafael Sánchez v. Eduardo Figueroa Padilla,* KLCE201900403, este Tribunal de Apelaciones había adjudicado que la parte apelante solo adquirió doscientas de las mil acciones de Lupis Enterprise mediante subasta judicial en el caso D CD2012-0559. Por consiguiente, estimó que operaba la doctrina de cosa juzgada. Ello dio lugar a que Lupis Enterprise presentara una *Oposición a Moción de Sentencia Sumaria Parcial.*

Por otra parte, el 15 de noviembre de 2024, el señor Sánchez Hernández presentó una *Moción Solicitando Sentencia Sumaria Por Prescripción.* En suma, sostuvo que no existía una reclamación que justificara la concesión de un remedio, toda vez que la causa de acción estaba prescrita, pues el señor Figueroa Padilla fue notificado de la remoción de sus puestos directivos el 24 de octubre de 2018, y la *Demanda contra Tercero* se presentó el 21 de abril de 2021. Por lo cual, ya habían transcurrido sobre dos años y seis meses desde que el señor Figueroa Padilla tuvo conocimiento de los hechos que, alegó, le causaron daños. Agregó que, aun si se tomaba en consideración la presentación de la *Moción de Nulidad de Decisiones Corporativas* que fue

presentada por la parte apelada-recurrida el 9 de enero de 2019 en el caso DCD2012-0559, el caso también estaría prescrito.

La parte apelada-recurrida ripostó mediante *Oposición A Moción De Sentencia Sumaria Por Prescripción*. Afirmó que la *Demanda de Tercero* clara y específicamente adelantaba una acción de nulidad de decisiones corporativas bajo el Artículo 7.15 de la Ley de Corporación, *infra*, y que no se estaba ante una acción general de daños y perjuicios bajo el Artículo 1802 del Código Civil de 1930, *infra*. Por ello, no le aplicaba el periodo prescriptivo de un año, sino que, al tratarse de una acción de nulidad bajo el Artículo 7.15, *infra*, era imprescriptible.

Finalmente, el 27 de enero de 2025, el foro primario emitió la *Sentencia Parcial* que causa la presentación del recurso de apelación ante nuestra consideración. Según adelantamos en la introducción, el foro primario declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por la parte apelada-recurrida, razonando que procedía la aplicación de la doctrina de cosa juzgada e impedimento colateral por sentencia a la controversia.[3]

---

[3] Al así determinar, el foro apelado realizó las siguientes determinaciones de hechos:

1. El 30 de noviembre de 2011, en el Tribunal de Primera Instancia, se presentó Rafael Sánchez Hernández v. Eduardo Figueroa Padilla y su esposa, Diana Jové Vélez, caso civil núm. D CD2012-0559, una demanda, sobre cobro de dinero, por falta de pago de honorarios de abogados de diversos casos (civil D CD2012-0559).

2. El 20 de abril de 2012, en el caso civil núm. D CD2012-0559, se presentó una demanda enmendada.

3. El 9 de enero de 2017, notificada el 10 de enero de 2017, en el caso civil núm. D CD2012-0559, el Juez Superior Fernando L. Rodríguez Flores emitió una Sentencia, condenando al matrimonio Figueroa-Jové a pagarle a la parte demandante reconvenida, el Lcdo. Sánchez $50,000.00, más $10,000.00 de honorarios de abogado, además, intereses por mora y temeridad a partir del 6 de abril de 2009, al 4.5%, y también, intereses legales a partir de la fecha que se emitió la Sentencia. En adición, se desestimó la reconvención, presentada por el matrimonio Figueroa-Jové.

4. El 24 de octubre de 2018, se realizó subasta del Certificado 1 de 200 acciones de Lupis Enterprise, Incorporated de fecha del 12 de junio de 2012, según surge del Acta de Subasta, se declaró al Lcdo. Sánchez ser el mejor postor por la suma de $57,000.00, se le adjudicó la buena pro y se le entregó el Certificado de Acciones número 1 de Lupis Enterprise, Incorporated.

5. El 15 de marzo de 2019, notificado esa misma fecha, el Juez Superior Fernando L. Rodríguez Flores emitió una Resolución, declarando no ha lugar la Moción de Nulidad de Venta Judicial y la Moción de Nulidad de Decisiones Corporativas, presentadas el 9 de enero de 2018, por la parte demandada, el matrimonio Figueroa-Jové.

6. El 21 de mayo de [ ] 2019, notificada el 22 de mayo de 2019, en alfanumérico KLCE201900403, el Tribunal de Apelaciones emitió una Sentencia, donde modificó la Resolución, emitida por el Tribunal de Primera Instancia, el 15 de marzo de 2019.

7. Los errores traídos ante el Tribunal de Apelaciones, por las partes, tanto en el Certi[o]rari como en su Oposición, en alfanumérico KLCE201900403 fueron los siguientes:

   Erró el TPI, al no decretar la nulidad de la venta judicial en este caso.

   Erró el TPI al no decretar la nulidad de las decisiones corporativas de Lupis Enterprises, Inc. hechas en este caso por la parte demandante recurrida.

   Erró el TPI al indicar que la parte demandante-recurrida obtuvo el 100% (o sea 1,000 acciones) de las acciones corporativas de Lupis Enterprises, Inc., cuando en el Aviso y Edicto notificaron que se promovía la venta judicial de Certificado 1 (de 200 de unas 1,000 acciones corporativas de Lupis Enterprises, Inc.).

   Erró el TPI al no garantizarle a la parte peticionaria su derecho al debido proceso de ley.

   Erró el TPI al excusar los requisitos y garantías procesales de las notificaciones del aviso de venta judicial dispuesto en la Regla 51.7 de las Reglas de Procedimiento Civil de Puerto Rico.

8. El Tribunal Apelativo en alfanumérico KLCE201900403, determinó lo siguiente:

   [Q]ue luego de evaluar la totalidad del expediente ante nuestra consideración, concluimos que el presente caso amerita nuestra intervención. Lo anterior, por ser la etapa más propicia para la consideración del caso de epígrafe y para evitar un fracaso de la justicia. Por lo tanto, expedimos el auto de certiorari. Eso dicho, procedemos a considerar los errores señalados por los Peticionarios.

   En su recurso de certiorari, los Peticionarios hacen cinco (5) señalamientos de error mediante los cuales exponen dos (2) planteamientos centrales. El primero de esos planteamientos es que erró el Tribunal de Primera Instancia al no decretar la nulidad de la venta judicial en el presente caso. El segundo, que erró el foro primario al indicar que el Sr. Sánchez obtuvo el 100% de las acciones corporativas de Lupi's y al no decretar la nulidad de las decisiones corporativas de Lupi's tomadas por éste. Procedemos a discutir cada uno de estos planteamientos de manera separada.

   [...]

   Por otra parte, respecto a su segundo planteamiento central, sostienen los Peticionarios mediante el tercer señalamiento de error que el Sr. Sánchez sólo obtuvo 200 de 1,000 acciones corporativas de Lupi's, pues el Aviso de pública subasta y el Edicto de subasta notificaron que se promovía la venta judicial de Certificado 1 (de 200 de unas 1,000 acciones corporativas de Lupi's), por lo que erró el Tribunal de Primera Instancia al indicar que éste obtuvo la totalidad de las acciones corporativas de Lupi's. A la luz de lo anterior, arguyen mediante el segundo señalamiento de error que erró el foro primario al no decretar la nulidad de las decisiones corporativas de Lupi's tomadas por el Sr. Sánchez, quien no es el único poseedor de acciones de la corporación y, de hecho, posee una clara minoría de las acciones corporativas en circulación. Añaden, respecto a ese particular, que el Sr. Sánchez no convocó una reunión conforme a las exigencias de la Ley General de Corporaciones, Ley Núm. 164-2009, según enmendada, 14 LPRA sec. 3501 et seq.

   De un examen de la Orden del Tribunal de Primera Instancia ordenando la venta judicial de las acciones corporativas de Lupi's, del Aviso de pública subasta, del Edicto de subasta, de la Moción en

cumplimiento de orden presentada por el Sr. Figueroa informando que había consignado el Certificado 1, del propio Certificado 1 consignado, entre otros documentos, surge de manera clara e incontrovertible que en el presente caso, contrario a lo que sostiene el Sr. Sánchez y a lo que concluyó el foro primario, el Sr. Sánchez obtuvo únicamente 200 acciones corporativas de Lupi's. Independientemente de que el Sr. Figueroa haya sido propietario de 200 acciones corporativas o de la totalidad de 1,000 acciones corporativas, lo cierto es que el Certificado consignado en el Tribunal de Primera Instancia representaba 200 acciones corporativas y ello fue precisamente lo que se vendió mediante pública subasta. Así, pues, mediante la venta en pública subasta celebrada en el caso de epígrafe el 28 de octubre de 2018, el Sr. Sánchez obtuvo únicamente 200 acciones corporativas de Lupi's. Una conclusión contraria no tan sólo estaría completamente desprovista de base en el récord, sino que sería una patente violación al debido proceso de ley de los Peticionarios. El tercer error señalado fue cometido.

Por último, respecto al segundo señalamiento de error, adelantamos que no procedía en este caso decretar la nulidad de las decisiones corporativas de Lupi's tomadas por el Sr. Sánchez. Esto, pues al margen de si procedía o no validar dichas decisiones está una cuestión jurisdiccional. Y es que, en este caso, el foro primario no tenía jurisdicción para considerar si procedía la nulidad de dichas decisiones. Nos explicamos.

En la etapa post-sentencia, el Tribunal de Primera Instancia conservó jurisdicción en el caso de epígrafe para reconsiderar su dictamen, para ordenar un nuevo juicio de ello ser solicitado por cualquiera de las partes y proceder en derecho, para conceder remedios contra las sentencias u órdenes, y para hacer valer la Sentencia emitida por éste. Ahora bien, la validez de las decisiones corporativas tomadas por el Sr. Sánchez como el tenedor del Certificado 1 de 200 acciones corporativas de Lupi's no podía ser dilucidada en la etapa post-sentencia del caso ante nuestra consideración. Ello, pues lo procedente no era promover dicha reclamación mediante una moción presentada post-sentencia, sino mediante un pleito independiente.

En el presente caso, es claro que el Tribunal de Primera Instancia actuó sin jurisdicción al entender en el planteamiento de los Peticionarios de nulidad de decisiones corporativas, por lo que su determinación respecto a ese particular es nula. Concluimos, por lo tanto, que el segundo error señalado fue cometido, pero por fundamentos distintos a los expresados por los Peticionarios. Aclaramos que lo aquí resuelto no prejuzga los méritos de cualquier acción independiente que pueda en su día ser presentada con relación a lo anterior.

En síntesis, concluimos que actuó correctamente el Tribunal de Primera Instancia al declarar No Ha Lugar la Moción de nulidad de venta judicial presentada por los Peticionarios, por lo que dicho foro no cometió el primer, cuarto y quinto error señalado. Por otro lado, concluimos que erró el foro primario al determinar que el Sr. Sánchez adquirió la totalidad de las acciones corporativas de Lupi´s, por lo que el tercer error señalado fue cometido.

Por último, respecto al segundo error señalado, concluimos que actuó sin jurisdicción y, por lo tanto, erró el Tribunal de Primera Instancia al entender en el planteamiento de los Peticionarios de nulidad de decisiones corporativas, por lo que su determinación respecto a ese particular es nula. Por todo lo anterior, procede expedir el auto de certiorari y MODIFICAR el dictamen recurrido.

IV.

Por los fundamentos anteriormente expuestos, expedimos el auto de certiorari y MODIFICAMOS la Resolución recurrida, a fines de confirmar la venta judicial de un certificado de 200 acciones y dejar sin efecto, por falta de jurisdicción, lo relacionado con la nulidad de decisiones corporativas. (Énfasis en el original y notas al calce omitidas).

También, el 27 de enero de 2025, el TPI declaró *No Ha Lugar* la *Moción Solicitando Sentencia Sumaria Por Prescripción*. El foro de instancia concluyó que no aplicaba la doctrina de ley del caso, y que el estatuto que regía en la controversia era la Ley de Corporaciones, *infra*, siendo el Código Civil, *infra*, aplicable únicamente de manera supletoria. Aseveró no haber sido puesto en posición de atender la solicitud de sentencia sumaria por prescripción en sus méritos, pues no se presentaron ninguno de los documentos necesarios para poder realizar dicho análisis.

Luego de que tanto Lupis Enterprise, como el señor Sánchez Hernández, presentaran sus respectivas peticiones de reconsideración, y que fueron denegadas, acudieron ante nosotros, el primero, mediante recurso de apelación, y el segundo mediante recurso de *certiorari*.

En el caso de Lupis Enterprise, esta identificó un solo señalamiento de error, que es el siguiente:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE BAYAMÓN, EN EMITIR UNA SENTENCIA PARCIAL CUANDO NO HAY UNA ADJUDICACIÓN FINAL DE UNA CONTROVERSIA Y EN SU APLICACIÓN A LOS HECHOS DE LA DOCTRINA DE COSA JUZGADA E IMPEDIMENTO COLATERAL POR SENTENCIA.

Por su parte, el señor Sánchez Hernández enumeró los siguientes señalamientos de error en su recurso de *certiorari*:

> PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA EN NO TOMAR EN CONSIDERACIÓN QUE EL RECURRIDO FUE REMOVIDO DE SUS PUESTOS CORPORATIVOS EN LUPIS ENTERPRISE INCORPORATED EL 24 DE OCTUBRE DE 2018 Y CUANDO LLEVÓ A CABO SU RECLAMACIÓN EN DAÑOS EL 21 DE ABRIL DE 2021, LA RECLAMACIÓN ESTABA PRESCRITA.

> SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA EN ENTENDER QUE NO PROCEDE EL ART. 1802 DEL C[Ó]DIGO CIVIL DEL 1930, ASÍ COMO EL ART. 1868 DEL C[Ó]DIGO CIVIL DE 1930.

---

9. El 28 de junio de 2019, notificado el 3 de julio de 2019, el Tribunal de Apelativo en alfanumérico KLCE201900403, emitió una Resolución, declarando no ha lugar la Moción de Reconsideración, en consecuencia, confirmaron la totalidad de su Sentencia emitida.

10. El 16 de agosto de 2019, notificado el mandato el 5 de septiembre de 2019, el Tribunal Supremo, en alfanumérico CC-2019-0625, emitió una Resolución acogiendo la Petición de Retirar la Petición de Certiorari de alfanumérico KLCE201900403, presentada por la parte demandante, el Lcdo. Sánchez.

TERCER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA EN NO TOMAR E N CONSIDERACIÓN LA CARTA NOTIFICANDO LA REMOCIÓN DEL RECURRIDO DE LOS PUESTOS CORPORATIVOS EN LUPIS ENTERPRISE INCORPORATED FECHADA EL 24 DE OCTUBRE DE 2018 Y LA ADMISIÓN DEL RECURRIDO DE QUE TIENE CONOCIMIENTO DEL MISMO LO CUAL SE EXPUSO EN UNA MOCIÓN FECHADA 9 DE ENERO DE 2019.

CUARTO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA EN QUE LOS TÉRMINOS PRESCRIPTIVOS QUE APLICAN SON LOS DE LA LEY DE CORPORACIONES Y NO EL CÓDIGO CIVIL Y QUE EL APELANTE NO PUSO EN CONDICIÓN AL TRIBUNAL PARA DICTAR LA SENTENCIA SUMARIA POR PRESCRIPCIÓN.

La parte apelada-recurrida acudió ante nosotros de manera oportuna, alzando argumentos en oposición, tanto al recurso de apelación, como al de *certiorari*.

## II. Exposición de Derecho

a.

En el ejercicio de su función revisora, el Tribunal de Apelaciones atiende sentencias parciales o finales, así como resoluciones y órdenes de carácter interlocutorio. *Peerless Oil v. Hermanos Pérez*, 186 DPR 239 (2012). La Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V, R.42.1, dispone, en lo pertinente, que el término *sentencia* incluye cualquier determinación del Tribunal de Primera Instancia **que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse**. (Énfasis provisto). En este sentido, *una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma tal, que no quede pendiente nada más que su ejecución. Torres Martínez v. Torres Ghiglioty*, 175 DPR 83, 94 (2008). Es decir, una sentencia pone fin a la controversia existente entre las partes mediante una adjudicación final. *Johnson & Johnson v. Mun. de San Juan*, 172 DPR 840, (2007); *García v. Padró*, 165 DPR 324 (2005).

Se ha de advertir que, mientras una *sentencia* pone fin a la controversia entre las partes mediante una adjudicación final, una *resolución interlocutoria* pone fin a un incidente dentro del proceso judicial. *US Fire Ins. Co. v. AEE*, 151 DPR 962, 967 (2000).

Junto a lo anterior se debe considerar lo previsto en la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R.42.3, que se encarga de atender las *sentencias parciales,* bajo los siguientes términos:

> Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia.

> Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2.

Como queda visto, esta regla permite a un tribunal dictar una sentencia sobre una o más reclamaciones, cuando es innecesario tener que esperar a dictarla sobre la totalidad de las reclamaciones. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Publs. J.T.S., 2005, T. IV, pág. 228, según citado en *Abrams Rivera v. ELA*, 178 DPR 914 (2010).[4] Estaremos ante una sentencia parcial final si el TPI cumple con los siguientes requisitos: (a) concluyó expresamente que no existía razón para posponer dictar sentencia sobre la reclamación que tenía ante sí: (b) ordenó expresamente que se registrara la sentencia. *Torres Martínez v. Ghiglioty*, supra; *Johnson & Johnson v. Mun. de San Juan,* supra*; US Fire Insur. Co. v. AEE,* supra; *Cárdenas Maxán v. Rodríguez*, 119 DPR 642 (1987).

Sin embargo, la regla bajo examen no es de aplicación *cuando lo que resuelve el Tribunal es sólo una controversia, aunque esta sea separable de las restantes. Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 26 (1986). Por esto, ***el hecho de que el tribunal exprese, específicamente, que no existía razón para posponer dictar sentencia y ordenar su registro no convierte***

---

[4] En la misma Opinión el Tribunal Supremo expresó que, en esencia, la derogada Regla 43.5 de Procedimiento Civil quedó inalterada en su contenido al ser aprobadas las Reglas de Procedimiento Civil de 2009, aunque sí cambió su enumeración a Regla 42.3.

***una resolución interlocutoria en una sentencia final***. (Énfasis provisto).
*Íd.*

b.

El Artículo 1204 del Código Civil de 1930,[5] ofrecía el fundamento sustantivo para la defensa de la cosa juzgada, siendo el impedimento colateral por sentencia una modalidad de este,[6] al disponer lo que sigue:

> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que esta se invoque, **concurra la más perfecta identidad** entre las cosas, las causas, **las personas de los litigantes** y la calidad con que lo fueron.
>
> [...]
>
> Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causa habientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.
>
> (Énfasis provisto).

Partiendo de tal articulado, nuestro Tribunal Supremo ha sostenido que la doctrina de la cosa juzgada solo cobra efecto *si existe la más perfecta identidad de cosas, causas, **las personas de los litigantes y la calidad con que lo fueron***. (Énfasis provisto). *Beníquez et al v. Vargas et al.*, 184 DPR 210, 221-225 (2012).

La cosa juzgada se diferencia de su modalidad del impedimento colateral por sentencia, en que este último no requiere que las controversias objeto del litigio sean las mismas, sin embargo, **sigue requiriendo el requisito de perfecta identidad en las personas de los litigantes**. (Énfasis provisto). *Presidential v. Transcaribe*, 186 DPR 263, 276-277 (2012). A tenor, la doctrina de impedimento colateral "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo

---

[5] Según se sabe, el Código Civil de 1930 fue derogado por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020. Sin embargo, para fines de la presente, se hace referencia únicamente al Código Civil derogado, por haber sido el vigente al momento de la controversia que nos ocupa.

[6] En *Olmeda Nazario v. Suerio Jiménez*, 123 DPR 294 (1989), se advirtió que el impedimento colateral por sentencia es una modalidad distinguible de la cosa juzgada, con requisitos distintos, cuya mención como defensa afirmativa ha de hacerse de manera independiente.

pleito **entre las mismas partes**, aunque estén involucradas causas de acción distintas". (Énfasis provisto). *Presidential v. Transcaribe, Íd.*, pág. 277, citando a *Beníquez et al. v. Vargas et al.*, supra, pág. 225.

Sobre la exigencia de identidad de personas en la defensa del impedimento colateral por sentencia, el tratadista Díaz Olivo recalca que:

> ...lo fundamental es que las personas jurídicas **que son parte en el primer y en el segundo procedimiento**, **deben ser las mismas que resultarán directamente afectadas por la excepción de la cosa juzgada**. Los efectos de la cosa juzgada se extienden a quienes intervienen en el proceso, a nombre y en interés propio. Se entiende, sin embargo, que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unido a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas. No obstante, se ha resuelto que la existencia de una relación familiar no es suficiente para esgrimir la defensa de cosa juzgada contra una persona que no fue parte en el pleito previo. Carlos E. Díaz Olivo, *Litigación Civil*, Editorial AlmaForte, 2da. Ed., pág. 133. (Énfasis provisto).

En definitiva, la aplicación del impedimento colateral por sentencia precisa el cumplimiento con los siguientes requisitos: 1) se adjudicó un asunto; 2) en una sentencia previa; 3) luego de haberse litigado; 4) **entre las mismas partes**, y; 5) el hecho adjudicado es esencial para un segundo pleito. (Énfasis provisto). *Landrau Cabezudo et al. v. Puertos et al.*, 2025 TSPR 7, 215 DPR ___ (2025); *Rodríguez Ocasio et al. v. ACAA*, 192 DPR 852, 862-863 (2017) (Sentencia).

c.

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, regula la sentencia sumaria. El Tribunal Supremo ha dicho que el propósito de este mecanismo procesal es resolver de manera rápida los litigios civiles en los que no exista una controversia de hechos real o sustancial sobre algún hecho material que requiera la celebración de un juicio en su fondo. *Zambrana García v. ELA*, 204 DPR 328, 341 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018). Se considera un hecho material aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso. *Zambrana García v. ELA*, supra; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que deniega su aplicación, este foro intermedio se encuentra en la misma posición que el foro primario para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 115. Los criterios que debemos seguir al atender la revisión de una sentencia sumaria dictada por el foro de instancia han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.*, págs. 118-119; *Roldán Flores v. M. Cuebas et al.*, supra, pág. 679. A tenor, el Tribunal de Apelaciones debe:

> 1)	examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;
> 2)	revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, supra;
> 3)	revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;
> 4)	y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 679.

Sin embargo, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 118. El primer punto se enfoca en el principio de que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. *Íd.*, pág. 115, citando a *Vera v. Dr. Bravo*, 161 DPR 308, 334–335 (2004). Por su parte, el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlas. *Íd.*

A tenor, la Regla 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, especifica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En suma, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. *Íd.* Ahora bien, "resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso". (Énfasis provisto). *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993 (2024); *Zambrana García v. ELA*, supra, págs. 341-342; *Jusino et al. v. Walgreens*, 155 DPR 560, 577 (2001).

En contraste, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3 (b) de las de Procedimiento Civil, *supra*. De aquí que la parte que se opone a que se dicte sentencia sumaria no puede descansar exclusivamente en sus alegaciones, ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, debe controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 138 (2006). Ello se puede lograr a través de contradeclaraciones juradas y contradocumentos que pongan en entredicho los hechos presentados por el promovente. *Ramos Pérez v. Univisión P.R., Inc.*, supra, pág. 215, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

Al considerar una moción de sentencia sumaria, se tendrán como ciertos los hechos no controvertidos que descansen en la prueba documental

presentada por la parte promovente. *Díaz Rivera v. Srio. de Hacienda,* 168 DPR 1, 27 (2006). Así, nuestro más alto foro ha establecido que, "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González, et al. v. M. Cuebas*, supra, pág. 137; Reglas 36.3(c) y 36.3(d) de Procedimiento Civil de 2009, *supra.*

Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". *ELA v. Cole*, 164 DPR 608, 626 (2005). Por ello, cuando exista la más mínima duda o controversia sobre hechos materiales o esenciales del caso, el tribunal denegará la sentencia sumaria y deberá celebrar un juicio en su fondo. *Díaz Rivera v. Srio. de Hacienda*, supra, pág. 27. Ello debe ser visto a la luz de que la mera existencia de "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria [...] cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 756 (2012).

Por último, al determinar "si existen controversias de hechos que impiden dictar una sentencia sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión*, supra, pág. 216.

d.

Las acciones para exigir responsabilidad civil por las obligaciones extracontractuales derivadas de la culpa o la negligencia prescriben por el transcurso de un año. Art. 1868 del Código Civil, 31 LPRA sec. 5298. A tenor con la *teoría* cognoscitiva *del daño*, este plazo comienza a cursar desde el momento en que el agraviado conoce del daño y su causante. *Rivera Ruiz v.*

*Mun. de Ponce,* 196 DPR 410, 426 (2016); Mun*. de San Juan v. Bosque Real, SE,* 158 DPR 743, 774 (2003).

En Puerto Rico la prescripción es una materia de derecho civil sustantivo y no procesal, que tiene como propósito atender el interés general de darle certeza a las relaciones jurídicas, pero que, a la vez, tiene que conciliarse con el interés individual de quienes quieren ejercer sus derechos. *SLG García-Villega v. ELA,* 190 DPR 799, 812 (2014); *SLG Serrano. Báez v. Foot Locker,* 182 DPR 824, 831 (2011). La prescripción extintiva acarrea la desestimación de cualquier acción que sea presentada fuera del término previsto para ello. *Maldonado v. Russe,* 153 DPR 342, 347 (2001). Se pretende así castigar la dejadez en el ejercicio de los derechos y evitar litigios que sean difíciles de adjudicar debido a la antigüedad de las reclamaciones. *SLG Serrano. Báez v. Foot Locker,* supra, pág. 831. En otras palabras, evitar que alguna de las partes quede en un estado de indefensión a consecuencia de la pérdida de evidencia, testigos que genera la resucitación de reclamaciones viejas. *Íd.*

e.

El Artículo 7.15 de la Ley General de Corporaciones de Puerto Rico (Ley de Corporaciones), 14 LPRA sec. 3655, provee un interdicto estatutario, bajo los siguientes términos:

> A petición de cualquier accionista . . . el Tribunal de Primera Instancia (Sala Superior) podrá oír a las partes y determinar la validez de cualquier elección, nombramiento, destitución o renuncia de cualquier director, miembro de un organismo directivo u oficial de cualquier corporación, así como el derecho de cualquier persona a ejercer o continuar ejerciendo tal cargo y, si el cargo fuere reclamado por más de una persona, podrá determinar a cuál de ellas le corresponde el mismo . . . Si se concluyera que no ha habido elección válida, el Tribunal de Primera Instancia (Sala Superior) podrá ordenar que se efectúe una elección, según lo prescrito en el Artículo 7.01 de esta Ley.

Por su parte, el ya citado tratadista Díaz Olivo, acentúa que el mecanismo legal descrito **es de carácter sumario**, siendo su propósito revisar **con prontitud** aquellas controversias sobre impugnación de procesos electorales y selección de funcionarios. C.E. Díaz Olivo, Corporaciones: Tratado de Derecho Corporativo, 2da ed. rev., Editorial AlmaForte, 2018, pág.

289. (Énfasis provisto). Tal rapidez en el proceso arriba detallado tiene como fin, "evitar que la corporación se vea afectada en sus operaciones por la controversia en torno a quiénes son sus directores u oficiales". Por lo tanto, está diseñado para "disponer de impugnaciones sobre procesos eleccionarios en los que participaron varios candidatos y existe incertidumbre en cuanto a la legitimidad de la junta seleccionada". *Íd.* "Por consiguiente, este mecanismo no está disponible cuando . . . en el recurso no se cuestiona la validez del proceso eleccionario en donde fueron seleccionados". *Íd.*

**III.  Aplicación del Derecho a los hechos**

a.

Considerando primero el único señalamiento de error alzado en el recurso de apelación, su lectura revela que requiere contestar dos interrogantes: 1) si el dictamen cuya revocación se nos solicita es propiamente una *Sentencia Parcial,* o estamos más bien ante una *resolución interlocutoria*; y 2) si acontecen los presupuestos que permiten la aplicación de la *cosa juzga* o el *impedimento colateral por sentencia.* Discutiremos ambos asuntos en el orden enumerado.

i.

Iniciamos por reconocer que la causa de acción ante la atención del TPI comprende varias reclamaciones, donde figuran partes múltiples, por lo tanto, susceptible su solución a través de lo previsto en la Regla 42.3 de Procedimiento Civil, *supra,* referente a la *Sentencia parcial.*

Sin embargo, aunque el foro primario estaba habilitado para dictar una *Sentencia parcial,* (y así lo entendió al incluir las palabras sacramentales requeridas por la Regla 42.3 citada), omitió darles a las partes una notificación adecuada sobre **cuál de las reclamaciones**, si alguna, quedó adjudicada mediante lo que denominó *Sentencia Parcial.* Por esto, no podemos reconocer el dictámen *apelado* como una *sentencia parcial,* al no haber adjudicado con finalidad las reclamaciones o los derechos y las obligaciones de las partes. La determinación del TPI a efectos de que en este caso resultaba de aplicación la

figura del impedimento colateral por sentencia, tan solo puso fin a un incidente dentro del proceso judicial, pero no adjudicó ninguna de las reclamaciones que tenía ante sí. Este error fue cometido.

ii.

Con relación al segundo de los asuntos planteados en el señalamiento de error bajo examen, nos resulta evidente que **no** correspondía aplicar la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, contra Lupis Enterprise, al no concurrir *la más perfecta identidad entre las personas de los litigantes.*

Afirmamos lo anterior partiendo del hecho indisputable de que Lupis Enterprise **nunca advino en parte** en el pleito *Rafael Sánchez Hernández v. Eduardo Figueroa Padilla y Diana Jové Vélez*, D CD2012-0559, Sentencia cuyas conclusiones fácticas se le imputaron a través de la cosa juzgada. Nos referimos a que fueron, precisamente, las determinaciones de hechos alcanzadas en la referida Sentencia las que, a través de la figura del impedimento colateral por sentencia, se le pretenden imponer como adjudicadas a Lupis Enterprise, sin que ni siquiera se contara con su participación en dicho proceso, lo que, a todas luces, resultaría en una lesión a su derecho a un debido proceso de ley.

Sobre lo anterior, no pasa por inadvertido que, en la *Sentencia Parcial* cuya revocación nos solicita Lupis Enterprise, el propio foro primario reconoció que, "[e]n cuanto al argumentó de Lupis **de que no hay completa identidad de parte tiene razón** [...]".[7] (Énfasis y subrayado provistos). Esta afirmación del Tribunal, por sí sola, debió haber resultado suficiente para que dicho foro se abstuviese de aplicar la doctrina de impedimento colateral por sentencia a Lupis Enterprise, y, en cambio, permitiera que dicha corporación litigase en su fondo la controversia sobre la titularidad de las acciones. No obstante, hecha la expresión citada, a renglón seguido el mismo foro primario

---

[7] Apéndice del recurso de apelación, KLCE2025000322, pág. 185.

añadió que "no era necesario que fuera parte en dicho caso ya que en dicha controversia de cuantas acciones adquirió el Lcdo. Sánchez no se requiere su comparecencia ya que dicho dictamen en nada afecta los intereses de la empresa". Afirmó, además, "tanto el Tribunal de Primera Instancia y el Tribunal de Apelaciones determinó que Lupis no era parte indispensable".[8]

Según el razonamiento del TPI expuesto, si una parte no fue considerada indispensable en un pleito anterior, no debe exigirse el requisito de identidad de partes en un pleito posterior para propósitos de aplicar la defensa de impedimento colateral por sentencia. No observamos en tal conclusión del foro revisado alguna alusión a fuente de derecho que la sostenga, máxime si se toma en consideración que, aún en los casos en que nuestra jurisprudencia ha prescindido de la identidad de causas para la aplicación de dicha defensa, ha mantenido como requisito esencial la perfecta identidad entre las mismas partes para que se pueda esgrimir la defensa de impedimento colateral por sentencia. *Landrau Cabezudo et al. v. Puertos et al.*, supra. Es decir, nuestro Tribunal Supremo ha puesto y sostenido en acento la perfecta identidad de las partes que intervinieron en un pleito, por encima de otras consideraciones.

Aún con lo dicho, compréndase que existe otra razón para que el TPI no hubiese aplicado la defensa del impedimento colateral por sentencia en este caso. Bajo los presupuestos dentro de los cuales se admite la aplicación de la referida defensa se incluye el esencial de que **se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior**. (Énfasis provisto). *P.R. Wire Prod. v. C. Crespo & Assoc.*, supra, pág. 141. No obstante, en este caso, **el hecho esencial de la titularidad de las acciones no pudo y no fue adjudicado por un panel hermano de este Tribunal de Apelaciones**. Siendo específicos, en KLCE201900403 este Tribunal de Apelaciones, a través de un panel hermano, se limitó a determinar que el señor Sánchez Hernández obtuvo únicamente

---

[8] *Íd.*

200 de las 1,000 acciones corporativas de Lupis Enterprise en la venta judicial. Nótese que este hecho es *distinto* al de quién o quienes ostentan la titularidad de las demás acciones corporativas, el cual no quedó adjudicado. Por consiguiente, el hecho esencial de quién es el titular de las acciones corporativas de Lupis Enterprise no puede ser adjudicado por primera vez en etapa apelativa, pues nuestra función es esencialmente revisora. Lo procedente, al igual que en el caso de la nulidad de decisiones corporativas, era promover dicha reclamación mediante un pleito independiente al D CD2012-0559, según fue advertido en la Sentencia bajo el KLCE201900403.

En la misma tónica, continuando con la alusión al KLCE201900403, debe resaltarse que, si el foro primario carecía de jurisdicción para adjudicar la validez o nulidad de las decisiones corporativas tomadas por el señor Sánchez Hernández, forzosamente, también carecía de jurisdicción este foro intermedio para adjudicar la titularidad de las acciones corporativas. Ambos asuntos estaban intrínsecamente vinculados, pues la legitimidad para participar y decidir en los procesos corporativos depende de quién ostenta válidamente la titularidad de las corporaciones. Por consiguiente, cualquier posible determinación sobre la titularidad de las acciones emitida post-sentencia resultaría igualmente afectada por el vicio jurisdiccional, y carecería de eficacia jurídica. Una sentencia dictada sin jurisdicción es inexistente en derecho y, por tanto, no puede producir efectos de cosa juzgada.

En definitiva, no opera la doctrina de cosa juzgada en su vertiente de impedimento colateral por sentencia. Lupis Enterprise no fue parte, ni compareció en el pleito anterior, por lo que no tuvo oportunidad de ser oída ni de defender sus intereses en el pleito. Pretender impartirle un carácter precluyente a una determinación judicial -sin haber sido parte, ni vencida en el caso previo- y privarle de la oportunidad de demostrar que le asiste derecho a un remedio le negaría al ente corporativo el debido proceso de ley que le asiste.

b.

i.

Entonces, atendiendo en adelante los cuatro señalamientos de error formulados en el recurso de *certiorari* KLCE202500322, esencialmente, el señor Sánchez Hernández cuestiona en estos la *Resolución* del foro primario denegando su petición de sentencia sumaria por prescripción de la *Demanda contra Tercero*. Es decir, esta parte afirma que tal causa de acción está prescrita y, concluido el descubrimiento de prueba, el foro primario no tenía que dilucidar hecho alguno adicional en controversia para disponer de tal asunto.

Sobre ello, la parte apelada-recurrida nos plantea que, en la *Moción Solicitando Desestimación por Prescripción* instada por Lupis Enterprise el 25 de junio de 2021, y en la *Moción Solicitando Desestimación* instada por el señor Sánchez Hernández del 28 de junio de 2021, se adelantaron idénticos planteamientos de prescripción, que fueron rechazadas por el foro primario. Además, aduce que tales partes promoventes de las referidas mociones de desestimación por presunta prescripción acudieron ante este foro intermedio a revisar la determinación aludida, mediante recurso de *certiorari* KLCE202200259, pero se denegó su expedición. En este sentido, la parte apelada-recurrida plantea que la presunta prescripción de la causa de acción aludida ya fue atendida en contra de sus promoventes.

Con relación a este asunto, el examen del tracto procesal revela que, en efecto, el señor Sánchez Hernández ha alzado la defensa de prescripción, pero mediante una herramienta procesal distinta y etapa procesal previa a la que evaluamos al momento. En concreto el dictamen inicial del TPI acerca de la prescripción fue en respuesta a una moción instada al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, cuyos presupuestos son muy distintos a los de una moción de sentencia sumaria, que no impiden que la parte inicialmente perdidosa pueda replantear el asunto en una etapa más avanzada del pleito. Como se sabe, ambos mecanismos procesales, Regla 10.2

y Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, Reglas 10.2 y 36, respectivamente, son claramente distinguibles, y, de ordinario, operan en etapas distintas del proceso.

Antes de identificar las diferencias entre las referidas mociones, se de reconocer que la denegatoria de la expedición del recurso de *certiorari* no implica posición alguna del Tribunal de Apelaciones respecto a los méritos de la causa sobre la cual trata el recurso. *Torres Martínez v. Torres Ghiglioty*, supra, pág. 98. Por tanto, una *Resolución* declarando *No Ha Lugar* un recurso de *certiorari* no puede ser utilizada como ley del caso. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1 (2016). En palabras más sencillas, la denegatoria de este Tribunal de Apelaciones a expedir el recurso de *certiorari* bajo el KLCE202200259, no puede interpretarse como una determinación en los méritos sobre la controversia de prescripción.

Aclarado lo anterior, cabe puntualizar que, al momento de evaluar una moción de desestimación instada al amparo de la Regla 10.2 de Procedimiento Civil, 31 LPRA Ap. V, R. 10.2, los jueces venimos obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *López García v. López García*, 200 DPR 50, 69 (2018). Es decir, el examen de una moción de desestimación bajo la Regla 10.2 citada se limita solo a la evaluación de las alegaciones contenidas en la demanda, en una etapa en que ni siquiera ha iniciado el descubrimiento de prueba.

En contraposición, el promovente de una moción de sentencia sumaria al amparo de la Regla 36 de Procedimiento Civil, *supra*, **no** puede descansar en las meras alegaciones contenidas en la demanda, sino que necesariamente tiene que presentarle al tribunal documentación que sirva para establecer los hechos materiales que propone como incontrovertidos, a través de declaraciones juradas, deposiciones, interrogatorios, admisiones, entre otros, que, a su vez, han de ser admisibles en evidencia. De ordinario, aunque no necesariamente, esta moción dispositiva se insta una vez ha concluido el

descubrimiento de prueba, de modo que la parte promovente cuenta con la prueba documental para superar las meras alegaciones contenidas en la demanda de las que trata una moción de desestimación bajo la Regla 10.2 citada.

Lo descrito fue precisamente lo acontecido en el caso ante nuestra consideración, pues la consideración inicial alcanzada por el TPI sobre prescripción aconteció al denegar una petición al amparo de la Regla 10.2 de Procedimiento Civil, *supra, vis a vis* la posterior denegatoria de una solicitud de sentencia sumaria al amparo de la Regla 36 de Procedimiento Civil, *supra,* cuyo tema de derecho principal también fue la alegada prescripción. Repetimos, mientras que en las primeras de dichas mociones dispositivas el foro primario solo tenía que sopesar las alegaciones contenidas en la demanda, en la moción de sentencia sumaria debía evaluar, además, la documentación incluida por las partes y hacer determinaciones de hechos incontrovertidos.

Establecida la distinción sobre el momento procesal y las características distintivas de una y otra moción dispositiva, juzgamos que estamos habilitados para, en consideración a la denegatoria de la moción de sentencia sumaria aludida, examinar el asunto de la prescripción *de novo.*

Además, habiendo auscultado si fueron cumplidas las formalidades dimanantes de la Regla 36(a) y (b) de Procedimiento Civil, 32 LPRA Ap. V, al presentar una moción de sentencia sumaria y un escrito en oposición a esta, juzgamos que las partes cumplieron sustancialmente con las tales.

ii.

Con el propósito de contextualizar la controversia sobre prescripción de la causa de acción alzada, antes de atender los hechos propuestos como incontrovertidos en la moción de sentencia sumaria, se ha de saber que la parte apelada-recurrida impugna la remoción del señor Figueroa Padilla de su cargo de presidente de la corporación, y el nombramiento de una nueva junta de directores en Lupis Enterprise. De igual forma la misma parte impugna la reunión donde se tomaron dichas decisiones corporativas, al presuntamente

no haberse citado a todos los accionistas, ni contar con el consentimiento de estos. A ello esta parte acompañó la alegación de que su petición se encontraba amparada por los remedios dispuestos en el Art. 7.15 de la Ley de Corporaciones, *supra*.

Según habíamos adelantado, a través del Art. 7.15 de la Ley de Corporaciones, *supra*, se provee como remedio la solicitud de un interdicto estatutario para que, a petición de cualquier accionista o de las personas allí descritas, el foro de instancia pueda revisar la validez de cualquier elección, nombramiento, destitución de cualquier director, miembro de un organismo directivo u oficial de cualquier corporación, así como el derecho de cualquier persona a ejercer o continuar ejerciendo tal cargo y, si el cargo fuere reclamado por más de una persona, determinar a cuál de ellas le corresponde el mismo. Nótese, sin embargo, que este artículo de la Ley de Corporaciones no crea una causa de acción por daños y perjuicios resultado de la acción que se impugna, sino que el remedio se enfoca en corregir el proceso eleccionario, no en proveer una indemnización. Además, al *ser un proceso de naturaleza sumaria se limita a revisar los asuntos que se tienen que considerar para resolver la controversia, **no asuntos secundarios***. M. Muñoz Rivera, Ley de Corporaciones de Puerto Rico: Análisis y Comentarios, San Juan, Ediciones SITUM, 2015, pág. 195. (Énfasis provisto).

A tenor con esto último, M. Muñoz Rivera, *Íd.*, pág. 194, sostiene que "*se busca que el proceso sea uno expedito para que las operaciones corporativas sean afectadas lo menos posible*". Más adelante la misma autora menciona que *el propósito de este artículo al proveer un método rápido para revisar el proceso de elecciones es prevenir que la corporación sea inmovilizada por controversias sobre directores u oficiales. Por ser un proceso de naturaleza sumaria se limita a revisar los asuntos que se tienen que considerar para resolver la controversia, no asuntos secundarios.* M. Muñoz Rivera, *Íd.*, pág. 195.

En la misma tónica, Díaz Olivo afirma que el mecanismo dispuesto por el Art. 7.15 bajo discusión es de naturaleza sumaria y busca revisar con

prontitud aquellas controversias sobre impugnación de procesos electorales y selección de funcionarios. Esto, *con el fin de evitar que la corporación se vea afectada en sus operaciones por la controversia en torno a quiénes son sus directores u oficiales*". C.E. Díaz Olivo, Corporaciones: Tratado de Derecho Corporativo, 2da ed. rev., Editorial AlmaForte, 2018, pág. 289.

Por tanto, no cabe duda de que los procedimientos descritos bajo el Art. 7.15, *supra*, se identifican como sumarios, aunque la Ley de Corporaciones, *supra*, no provea un término cierto en el que se puede solicitar el remedio allí provisto.

Abundando, al examinar el texto íntegro de la Ley citada, notamos que el Artículo 7.15 de la Ley de Corporaciones, *supra*, fue titulado *Impugnación de elecciones de directores; procedimientos **para determinar su validez***. En su cuerpo, el legislador usó frases como "[**a] petición de** cualquier accionista o director, o de cualquier oficial cuyo cargo [...]" y "el Tribunal **pueda** adjudicar el resultado del voto [...]" de las cuales podemos colegir una presunción de validez de la elección. Es decir, la elección no se considera nula de pleno derecho, sino que provee el mecanismo de la petición judicial para que se declare inválida. El foro de instancia, por su parte, puede o no declarar que hubo una elección válida. Por lo cual, es forzosa la conclusión de que se trata de una acción de anulabilidad, y no de nulidad absoluta, de manera que se mantiene la validez de la elección mientras se impugne ante el tribunal y este determine lo contrario. De esta forma queda derrotado el argumento de la parte apelada-recurrida alzado ante nosotros de que la causa de acción bajo el Art. 7.15 de la Ley de Corporaciones, *supra*, es imprescriptible.

iii.

Ahora bien, el asunto medular que resta ser determinado es cuándo inició el término para instar la causa de acción bajo el Art. 7.15 de la Ley de Corporaciones, *supra*, y por los **daños y perjuicios** que presuntamente fueron provocados por las decisiones tomadas en la reunión donde se destituyó al señor Figueroa Padilla. En atención a esto, el señor Sánchez Hernández afirma

que el señor Figueroa Padilla se enteró de su remoción el 24 de octubre de 2018, momento que da inicio al cómputo del término para presentar la causa de acción, según la teoría cognoscitiva del daño. Por lo cual, al señor Figueroa Padilla presentar la *Demanda* por daños y perjuicios el 21 de abril de 2021, lo hizo habiendo vencido por dos años y seis meses el término de un año que reconoce nuestro ordenamiento jurídico para reclamar tal indemnización.

Para sostener dicha línea argumentativa a través de hechos incontrovertidos, el señor Sánchez Hernández incluyó en su petición de sentencia sumaria la siguiente prueba documental: *Moción de Nulidad de Decisiones Corporativas*; *Moción de Nulidad de Venta Judicial*, (estas dos, presentadas por la parte apelada-recurrida el 9 de enero de 2019, en el caso civil núm. D CD2012-0559); *Contestación a Primer Pliego de Interrogatorio y Producción de Documentos*, dirigida al señor Figueroa Padilla, el 29 de enero de 2024 bajo el caso BY2020CV02231.

Entonces, prestando una mirada a la referida *Moción de Nulidad de Decisiones Corporativas*, de allí surge que la parte apelada-recurrida indicó que:

1. Es materia de récord que la parte demandante, Lic. Rafael Sánchez Hernández, en venta judicial celebrada el 24 de octubre de 2018 en el presente caso adquirió el Certificado 1 (de 200 acciones de 1,000 acciones) de Lupis Enterprises Incorporated.

2. El mismo día **24 de octubre de 2018** el demandante, Lic. Rafael Sánchez Hernández, reclamando ser dueño de todas las acciones de Lupis Enterprises Incorporated (y como ya hemos visto sólo poseía a ese momento 200 de 1000 acciones) separó de su cargo de todas las posiciones que ocupa en dicho ente corporativo al co-demandado, Sr. Eduardo Figueroa […]. (Énfasis provisto).

Similarmente, en la *Contestación a Primer Pliego de Interrogatorio y Producción de Documentos* se le preguntó al señor Figueroa Padilla lo siguiente:

28. **Indique la fecha en que advino en conocimiento de que fue removido de los cargos** que ocupa[b]a en Lupis, por el tercero demandado.

**Contestación 28**

**Fue al recibirse la carta del Lic. Luis Arrufat del 24 de octubre de 2018.** (Énfasis y subrayado provistos).

Sopesada tal prueba documental, la juzgamos suficiente en derecho para establecer como un hecho incontrovertido que el señor Figueroa Padilla tuvo conocimiento de los hechos que originaron su reclamo a ser indemnizado a partir del 24 de octubre de 2018, y que este hecho no fue debidamente controvertido. Sobre esto último, la parte apelada-recurrida se limitó a incluir el número de entrada de SUMAC del *Escrito Solicitando Desestimación por Prescripción* y argüir, de manera genérica, que el párrafo 11 de la petición de sentencia sumaria, *no traía nada nuevo.* Como mínimo, ante la presentación de la documentación antes citada, según fue presentada por la parte promovente de la moción de sentencia sumaria para establecer el hecho descrito, le correspondía a la parte apelada-recurrida incluir alguna prueba documental admisible en evidencia que sirviera para controvertirlo, pero ello no ocurrió. Con mayor especificidad, no surge documentación en el expediente que cumpla la función de impugnar el hecho propuesto con incontrovertido, y sustentado con evidencia, de que el señor Figueroa Padilla fue notificado de la remoción de los puestos directivos el 24 de octubre de 2018, a partir del cual cabía imputarle conocimiento del hecho que dio lugar a su reclamo en daños y perjuicio. Es de ver que, ni siquiera en la *Reconvención y Demanda de Tercero* aludida se hizo constar la fecha en que se suscitaron los hechos.

Por tanto, ateniéndonos al término prescriptivo de un año provisto para las causas de acción en daños y perjuicios que dispone el Art. 1868 del Código Civil, *supra,* cabe reputar como tardía la presentación de la *Demanda contra tercero* el 21 de abril de 2021, a más de dos años del señor Figueroa Padilla haber conocido el evento causante de los daños que alega. Es decir, la causa de acción está prescrita, por tanto, el tribunal *a quo* debió acoger la moción de sentencia sumaria y desestimarla.

De igual forma, la solicitud del remedio interdictal previsto en el Art. 7.15 de la Ley de Corporaciones, *supra,* en exceso de dos años de tomadas las decisiones corporativas, incluyendo la destitución del señor Figueroa Padilla,

es incompatible con el carácter sumario de este, por lo que no le asiste derecho al remedio.

**IV.  Parte dispositiva**

Por los fundamentos que anteceden, revocamos la *Sentencia Parcial* apelada, además de expedir y revocar la *Resolución* recurrida. A tenor, ordenamos devolver el caso al Tribunal de Primera Instancia para continuar los procedimientos en los asuntos que queden pendientes.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

La Jueza Grana Martínez disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones